UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLINTON JAMES HOLZ,

        Plaintiff,                    Case Number 05-74259
                                           Honorable David M. Lawson

v.

CITY OF STERLING HEIGHTS, JAMIE
DUBAY, JOHN BEAUPRE, BRANDON
PLUGER, and JAMES WOOD,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Clinton James Holz, has filed an amended complaint in this Court alleging that his constitutional rights were violated when Sterling Heights City police officers arrested and maliciously prosecuted him for drunken driving. Holz admittedly was driving a motor vehicle, and chemical tests showed unequivocally that he was intoxicated. But Holz contended that he was not operating his pickup truck in a place that was open to the public or generally accessible to motor vehicles, which is an element of the crime under Michigan law. A state court jury agreed with him and found him not guilty. However, the Court finds in this case that the undisputed facts demonstrate that the police officers had probable cause to arrest the plaintiff, his prosecution likewise was supported by probable cause, his constitutional rights were not abridged throughout the state court proceedings, and the individual defendants did not conspire to deprive him of those rights in violation of federal law. Therefore, the Court will grant the defendants' motion for summary judgment and dismiss the case.

I.

The events in this case occurred in November 2003 at a condominium construction site in the City of Sterling Heights, Michigan. The plaintiff was working there as a night watchman for his father, who was developing the property for condominiums known as Plumbrook Greens Townhouses. Some of the units were completed, and according to the amended complaint, the project was in its "final phase." Amend. Compl. at ¶ 25. The plaintiff's father testified at the criminal trial that there were construction barrels and signs indicating the area where the plaintiff was driving was a construction zone. Although the plaintiff alleges that the area was hazardous and subject to occupational safety regulations, *see* Amend. Comp. at ¶ 20, he admits he drank "some beers" while working at the construction site and driving his pickup truck on his inspection tours. Am. Compl. at ¶ 15.

The plaintiff testified that the roads throughout the development were paved, but dirt from the construction area was pushed out onto the road surface obscuring the pavement in the area still under construction because the construction crew was digging basements in the daytime. There were residents living in the townhouses on the south side of the project. The site was located near the corner of Schoenherr and Utica Roads, both of which are major thoroughfares in the area. Residents entering the development would drive into the common entrance off Schoenherr Road on an entry road that split in two directions. The residents would turn south (left) to travel to their buildings; the last phase under development was on a road that led to the north (requiring a right turn).

Shortly after midnight on November 14, 2003, defendant Jamie Dubay, an officer with the Sterling Heights Police Department, observed the plaintiff driving a Ford pickup truck in the

-2-

construction area in manner he described as erratic.  The plaintiff was driving over piles of dirt in the area under development causing the truck's headlights to bounce up and down, which attracted Dubay's attention.  Officer Dubay testified that he saw the plaintiff exit the construction area and drive toward Schoenherr Road on a paved road within the site.  Dubay turned onto the entrance road, flashed his spot light, and stopped the plaintiff's truck.  Dubay said that the plaintiff emitted a strong odor of alcohol and admitted he had consumed eight beers.  The plaintiff testified that he had been drinking but claimed not to know how many beers he had, although it was at least four.

Both the plaintiff and Dubay identified the location of the traffic stop on a construction site map that was received in evidence at the criminal trial.  Dubay fixed the location at the point where the entrance road split into its north and south branches, as shown by the "X" on the trial exhibit reproduced below:



At his deposition, the plaintiff identified the identical location on a similar site map that was marked as a deposition exhibit reproduced here:



Defs.' Mot. Summ. J. Ex. B, C. Holz Dep. Exhibit A.

Officer Dubay contacted his dispatcher, and defendants Beaupre, Wood, and Pluger, also police officers, were sent to the scene for back up.  While he was waiting for the other officers, Officer Dubay administered several field sobriety tests to the plaintiff.  Dubay testified at the preliminary examination that the plaintiff failed the sobriety tests.  By this point Officers Beaupre, Wood, and Pluger had arrived.

Officer Dubay wrote in his police report that officers Beaupre and Wood "assisted at scene, witnessed sobriety exercises." Defs.' Mot. Summ. J. Ex. G, Person/Witness List. Apparently this is not entirely true as Beaupre and Wood did not actually witness the sobriety exercises. Officer Dubay testified at his deposition as follows:

> A. I wasn't sure what they witnessed. I was going through my sobriety exercises. I don't know when they pulled up. He was not in custody yet. I don't know if they pulled up after I was finished with my sobrieties or while I was in the process of doing them. I don't remember.
> Q. Aren't these reports supposed to be accurate?
> A. You're talking about two-and-a-half years ago, I can't remember these things.
> Q. Well, why didn't you ask them whether they witnessed them?
> A. Because either way they probably would have not been able to testify to what they weren't paying attention to. They were there to assist me, they weren't there to witness sobriety exercises. It was my case, it wasn't theirs.
> Q. So, that's your reason?
> A. Reason for what?
> Q. What was your reason for putting them down when you didn't know?
> A. Because they assisted me at the scene.

Defs.' Mot. Summ. J. Ex. A, Dubay Dep. at 17-18.

Officer Pluger gave the plaintiff a preliminary breath test (PBT), and the plaintiff registered .17 grams of alcohol per 210 liters of breath. Officer Pluger described the procedure at his deposition as follows:

> When I arrived, I got the PBT out of my car, went up to where Jamie [Dubay] was at, he was at the back of his patrol car, advised Mr. Holz I was a police officer, I was requesting him to take a preliminary breath test to do so as a result of a civil infraction and $100 fine. He had no objections to taking it, he took the PBT. I believe the results were .17.

Defs.' Mot. Summ. J. Ex. F, Pluger Dep. at 6-7. The plaintiff's testimony appears to agree with that of Officer Pluger regarding the PBT:

> Q. All right, were you read PBT rights?
> A. I don't recall.
> Q. Did you blow into a PBT?

-5-

    A.  Yes, I did.
    Q.  Did you see the results?
    A.  I was told the result.  No.
    Q.  Were you told what the result was?
    A.  Yes.
    Q.  What were you told?
    A.  I forgot.  It's –
    Q.  If I said it was .17, would that refresh your memory?
    A.  Yes, that would be approximate, .18, .17.

Defs.' Mot. Summ. J. Ex. B, C. Holz Dep. at 111-12.

Dubay then performed a computer-assisted record check and discovered that the plaintiff had two prior drunken driving convictions.  Since under Michigan law a third offense elevates the crime from misdemeanor to felony, the plaintiff was arrested for felony drunken driving.

Apparently some of the police cars in Sterling Heights are equipped with video cameras. Officer Pluger was the only one with a video camera in his police car that morning; however Pluger says that his camera did not permanently record any of these events.  Pluger testified that he was only called to the scene because he had a PBT device.  The video from Pluger's car was destroyed at the end of his shift.  Pluger explained:

> A. I didn't see any evidentiary value.  I didn't observe him driving.  I didn't observe the sobriety test.  As far as I'm concerned alls [sic] it would have showed [sic] is me pulling up behind another patrol car.  I didn't see any evidentiary value so I didn't feel it was necessary and Officer Dubay did not request it of me.

Pl.'s Am. Resp. Ex. F, Pluger Dep. at 10.

The plaintiff was transported to the Sterling Heights police station, where he was administered two breathalyzer tests on a Datamaster machine.  The results were .19 and .18 grams of alcohol per 210 liters of breath.  Officer Dubay filled out a warrant request, and the Macomb County prosecutor's officer filed a felony complaint.

-6-

A preliminary examination was held in accordance with Michigan law.  Officer Dubay described the location of the arrest and the plaintiff's driving in his court testimony:

> A.  It happened at a construction site at Utica and Schoenherr.  Um, exact time, I'd have to look at the report.
> Q.  Okay.  Could you describe the – what the construction site was?
> A.  It was the condominium complex that was goin' up on the southwest corner.  Um, the condos weren't up at the time; it was dirt piles, and it had the paved road leading out to Schoenherr.
> Q.  And was that open to general traffic on – off of Schoenherr?
> A.  Yes.
> Q.  Okay.
> . . .
> [cross] Q.  Officer, you testified that you observed him driving on the construction site.  Was he in – was the area where he was driving was it completely under construction?
> A.  No.  The, the drive was clear; anyone could go back in there.  There was no, there was no houses or condos put up in that area at all; it was just dirt and mounds of dirt on the side of the paved roadway.
> Q.  And he was driving on the dirt at the time that you saw him?
> A.  Initially, when I first saw him, yes.  Yeah.
> Q.  And then when you came around you, you were on the, the open road and when you came around and entered onto the property he was where?
> A.  He was on– he was on the paved roadway heading towards Schoenherr Road in the drive.
> Q.  But he–had he exited onto Schoenherr Road?
> A.  No.
> . . .
> Q.  If I showed you a map of the property would you be able to indicate where you saw him?
> A.  Yes.  Well, like I said, these–none of these condos were, were in here.  Um, I initially saw him in this area.  I initially saw him in this area; these were all hills.  He was driving on the hills around here.  When he saw me here he went out onto the roadway and he drove around here and out to here–I stopped him right here.
> Q.  Would you make an "X" on there where you, where you stopped him?  [the exhibit is reproduced above]
> . . .
> THE COURT:  Officer, this construction site–the road was completed, correct?
> THE WITNESS:  Correct.
> THE COURT:  Paved road?
> THE WITNESS:  Yes.
> THE COURT:  And were there–had anyone moved in yet?

> THE WITNESS:  Yes.  Most of it was open, but the northern part was still under construction, but--
> THE COURT:  So there were residents within the--
> THE WITNESS:  Correct.
> THE COURT:  –the townhouses?
> THE WITNESS:  Yes.

Defs.' Mot. Summ. J. Ex. C, Prelim. Exam. Tr. at 4-5, 9-10, 14.

The complaint completed by the prosecutor erroneously stated that the crime occurred on Schoenherr Road although Officer Dubay's report and testimony indicate that it occurred on an unnamed, paved road in a construction area near Schoenherr Road.  At the preliminary examination, the prosecutor moved to amend the complaint to so indicate.

At the preliminary examination, Holz's attorney argued that the crime had not been proved because of the absence of evidence that the driving occurred in a public place, so there was no probable cause to hold the plaintiff for trial in circuit court.  According to the transcript of the proceedings, the state court magistrate rejected that contention:

> MS. WALTON [plaintiff's attorney in criminal proceedings]:  Your Honor, our position is just that that was not an open public road at that time.  The, the officer has clearly identified the property as being under construction where he viewed my client driving was under construction.  [sic]  In fact, he was driving on dirt mounds when he was first observed.  And so we–it is our position that it was not open to the public and we therefore feel that there was not probable cause to believe that he was driving on a public road.
> THE COURT:  All right.  In response.
> MR. SABAUGH [the state prosecutor]:  I, I suppose you could drive a car on a lawn, Judge, and it's not open to the public, but you're still operating–it's still an area which is--
> THE COURT:  Well, it's my understanding this area was open to the public.  Were there not residents within this area?
> MR. SABAUGH:  The description that the officer gave that the roadway was accessible via Schoenherr was open to the public.
> THE COURT:  All right.
> MR. SABAUGH:  And he was found on that road driving.
> THE COURT:  Well, that's where he was pulled over, was he not.
> MR. SABAUGH:  Yes.

-8-

> THE COURT: All right. Ms. Walton, any response?
> MS. WALTON: Ah, no, your Honor.
> THE COURT: Well, the Court believes the road was accessible due to the fact that
> it was open to the townhouses. Sir, I haven't heard the contrary.

Defs.' Mot. Summ. J. Ex. C, Prelim. Exam. Tr. at 15-17. The Court granted the prosecutor's motion

to amend the felony complaint, and the plaintiff was bound over for trial.

The plaintiff filed a motion to dismiss the charges in the state circuit court based on the same

argument. The circuit court judge denied the plaintiff's motion to dismiss by completing a form

entitled "Hearing Disposition" and marking a box next to "Denied." Defs.' Mot. Summ. J. Ex. J,

Hearing Disposition. The matter proceeded to trial, and, as noted earlier, a jury acquitted the

plaintiff of the charge.

On November 7, 2005, the plaintiff filed his complaint alleging violations of the Fourth,

Fifth, Sixth, Eighth, and Fourteenth Amendments via 42 U.S.C. § 1983, together with state law

claims of intentional infliction of emotional distress, respondeat superior, negligence, false

arrest/imprisonment, and malicious abuse of process. On December 6, 2005, Judge Nancy

Edmunds, to whom this case originally was assigned, dismissed the state law claims and required

the plaintiff to file an amended complaint. On December 22, 2005, the plaintiff filed his amended

complaint, which contains four counts, three of which are labeled "Violations of Constitutional

Rights" (counts I through III) and one of which is labeled "Conspiracy to Violate Civil Rights"

(count IV). Count I is directed against the individual officers and alleges "[t]he intentional

deprivations of Plaintiff's constitutional rights . . . as guaranteed by the fourth and fourteenth

amendments." Count II is also against the individual officers but does not cite any specific

constitutional provision. It alleges "[t]he intentional deprivations of Plaintiff's constitutional rights

by [the defendants] when they had no lawful authority to take Plaintiff into custody and arrest

-9-

Plaintiff, was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the constitutional rights of Plaintiff." The parties appear to believe that this count alleges malicious prosecution. Count III is directed against the city and two supervisors but does not cite any particular provision of the constitution. It alleges that "[i]t was the Policy and Practice of the City of Sterling Heights to employ certain Police Officers, including [the defendants] to cover up constitutional rights violations and despite the lack of probable cause to arrest for any violation which would justify their actions. This policy and practice of Sterling Heights encourages and caused constitutional violations." Count IV cites 42 U.S.C. § 1983, but it accuses the individual officers of conspiring to violate the plaintiff's "statutory civil rights."

The case was reassigned to this Court as part of a general docket adjustment. On September 15, 2006, the defendants filed a motion for summary judgment in which they argue that the plaintiff's assertions that probable cause did not exist are barred by collateral estoppel and the defendants are entitled to qualified immunity. The plaintiff filed a response on October 8, 2006 and an amended response on October 20, 2006. The defendants filed a reply on November 7, 2006. The Court heard oral argument on the motion on November 15, 2006.

In his response brief, the plaintiff contends that collateral estoppel does not bar his claim of malicious prosecution, which he maintains violated the Fourth Amendment, because the police officers, and Officer Dubay in particular, offered false testimony at the preliminary examination. He also filed an affidavit from Thomas Martinelli, who professes to be a police misconduct expert, documenting several procedural irregularities allowed by the Sterling Heights police department relating to the preservation of evidence (i.e. the in-car video tape), reporting of activity, testifying at trial, and training of its officers. Martinelli says that these defects in institutional procedure

-10-

"foster[] a work environment that demonstrated a deliberate indifference to the constitutional rights of the plaintiff, Mr. Clinton Holz, and impliedly, to the citizens investigated and arrested by their officers, in their city." Martinelli Aff. [dkt # 31] at ¶ 4. The defendants respond that there were no constitutional violations suffered by the plaintiff on the night in question, and therefore there can be no municipal liability.

## II.

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus a factual dispute that "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment that is properly supported. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.*, 190 F.3d 768, 772 (6th Cir. 1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

Although "[i]n evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party,'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003), the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an

-12-

essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

To prevail on his section 1983 claim, the plaintiff "must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). There is no challenge to the proposition that the defendants were acting under color of law. However, the defendants contend that no Fourth Amendment violation occurred in the arrest and prosecution of the plaintiff.

At oral argument, the Court commented that it was not clear from the pleadings and motion papers whether the plaintiff was alleging a Fourth Amendment violation based on an illegal arrest, or contended only that his prosecution proceeded absent probable cause in violation of that Amendment, or both. Upon re-examining the amended complaint, however, it is apparent that the plaintiff contends that both his arrest and prosecution violated his constitutional rights. *See* Am. Compl. at ¶ 39. Therefore, the Court will address the defendants' summary judgment motion as to both theories in turn.

A.

The plaintiff contends that the defendants violated his "right to be free from illegal seizures" and his "[r]ight to be free from . . . false arrest [and] false imprisonment . . . as provided by the [F]ourth and [F]ourteenth [A]mendments of the United States Constitution." Amend. Compl. at ¶ 39(a) and (c). It is clear that the protection of the Fourth Amendment includes the right to be free from unreasonable seizures. *California v. Hodari D*, 499 U.S. 621, 624-25 (1991). Arrests may not be made except on probable cause. *Dunaway v. New York*, 442 U.S. 200, 212-13 (1979). However, this Court must take care to "assess the existence of probable cause from the perspective of a

-13-

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citations omitted).

The existence of probable cause necessary to justify an arrest is determined by assessing "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The question of what constitutes an offense is determined here according to state law. In this case, Officer Dubay testified that he saw the bouncing lights of a truck traveling through a construction site late at night and proceeded to investigate. The plaintiff testified to facts that confirm those observations. It is undisputed that the plaintiff then drove his truck off the mounds of dirt and onto a paved roadway within the condominium complex, stopping at the point where the road split into portions leading to the occupied and under-construction areas of the development.

There can be no doubt that Officer Dubay acted properly and within the Constitution when he signaled the plaintiff to stop his truck. The truck was observed to have been driving erratically in an area that was not open to the public. These facts could lead a reasonable officer to suspect that the driver was operating the vehicle carelessly or was trespassing on the property under construction. Police officers may briefly stop an individual for investigation if they have a "reasonable suspicion" that the individual has committed a crime. *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996). "The same Fourth Amendment test applies to vehicle stops." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999). "Reasonable suspicion" must be based upon "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *see Houston*, 174 F.3d at 813. It

-14-

requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). "The standard outlined in *Terry* and its progeny is not onerous." *Houston*, 174 F.3d at 813. The requisite level of suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *McPherson v. Kelsey*, 125 F.3d 989, 993 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998). "Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause." *Houston*, 174 F.3d at 813 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)); *McPherson*, 125 F.3d at 993.

Once Officer Dubay encountered the plaintiff, it was apparent that he had been drinking alcohol. Michigan Compiled Laws section 257.625 states:

> A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area for the parking of vehicles, within this state if the person is operating while intoxicated.

Mich. Comp. Laws § 257.625(1). The parties do not dispute that Dubay had probable cause to believe that the plaintiff was driving while drunk. The plaintiff insists, however, that he was not operating his truck in a "place open to the general public or generally accessible to motor vehicles" because the area was marked as a construction zone not open to the public. Therefore, he argues, Officer Dubay could not have believed reasonably that the plaintiff's conduct violated the state drunken driving law. The Michigan intermediate appellate court's interpretation of the statute does not support the plaintiff's argument, however.

In *People v. Nickerson*, 227 Mich. App. 434, 575 N.W.2d 804 (1998), the Michigan Court of Appeals gave a broad reading to that aspect of the Michigan drunk driving statute. The court held

-15-

that the statute was violated by an intoxicated person driving "in the pit area of the Owendale

Speedway."

> Here, the statutory language is clear. Specifically, the disjunctive phrases "open to
> the general public" and "generally accessible to motor vehicles" specify two distinct
> alternative places other than highways where driving a vehicle while under the
> influence of liquor is prohibited. Thus, even if a place is not "open to the general
> public," the OUIL statute is violated if a person, while under the influence of liquor,
> is driving in a place "generally accessible to motor vehicles." Clearly the Legislature
> intended to broaden the coverage of the OUIL statute when it amended this statute
> to additionally prohibit drunk driving in places "generally accessible to motor
> vehicles." The circuit court erred in construing the OUIL statute as prohibiting
> driving while under the influence of liquor in places "generally accessible to the
> public." The district court erred in failing to separately determine whether driving
> in the speedway's pit area while under the influence of liquor fell within the purview
> of the OUIL statute's "generally accessible to motor vehicles" language.

*People v. Nickerson*, 227 Mich. App. 434, 440, 575 N.W.2d 804, 807 (1998).

Because the undisputed facts in this case establish that Officer Dubay stopped the plaintiff's

truck in an area within the condominium complex that was adjacent to the roadway into the occupied

portion of the development, the plaintiff was seen driving his truck on the paved roadway in that

area, and he was drunk while driving the truck, the police officer reasonably concluded that the

plaintiff drove his truck in an area that was "generally accessible to motor vehicles." Therefore he

had probable cause to arrest the plaintiff for violating state law. The Court finds that there was no

constitutional violation arising from the arrest.

B.

The plaintiff also argues that the officers had no probable cause to seek an arrest warrant or

otherwise pursue the felony drunken driving charge against him. He says that proceeding with the

prosecution once it was apparent that the conduct took place in a private construction site was a

malicious act and violated the Fourth Amendment.

-16-

The question of whether the plaintiff can claim a constitutional violation for what amounts to a malicious prosecution theory has been subject to considerable debate in this Circuit since the Supreme Court decided *Albright v. Oliver*, 510 U.S. 266 (1994) (plurality opinion). In that case, the petitioner was arrested for violating state controlled substance laws. A warrant was issued for his arrest, and when he learned of the warrant, he turned himself in. Later, a court held that the act the petitioner was charged with committing – selling a substance that looked like an illegal drug – did not constitute a violation of Illinois law, and the case was dismissed. The petitioner then sued in federal court, alleging that the police had violated the Fourteenth Amendment by arresting him without probable cause. The Supreme Court plurality held that there is no right under the Fourteenth Amendment "to be free from criminal prosecution except upon probable cause." *Albright*, 510 U.S. at 268. The petitioner in that case did not allege that his Fourth Amendment rights had been violated. The Court "express[ed] no view as to whether petitioner's claim would succeed under the Fourth Amendment, since he has not presented that question in his petition for certiorari. We do hold that substantive due process, with its 'scarce and open-ended' 'guideposts,' *Collins v. Harker Heights*, 503 U.S. at 125, 112 S.Ct. at 1068, can afford him no relief." *Albright*, 510 U.S. at 275.

Since *Albright*, there is some dispute in the Sixth Circuit about the validity of constitutional malicious prosecution claims even under the Fourth Amendment. In *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999), the court held that the plaintiffs stated a constitutional claim under the Fourth Amendment when they alleged that the defendants "fabricated evidence and manufactured probable cause," "held [them] in custody, despite a lack of probable cause to do so," and "maliciously prosecute[d] and convict[ed] them." *Id.* at 1005. The court stated that "[t]he right must be asserted according to the Fourth Amendment because the Supreme Court, in *Albright v. Oliver*,

-17-

510 U.S. 266 (1994), held that there was no such substantive due process right.  Justice Ginsburg, in a concurrence, noted that the Fourth Amendment would provide sufficient relief.  *See Albright*, 510 U.S. at 281 (Ginsburg, J., concurring)."  *Id.* at 1006 n.19.  However, in *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001), another panel of the court explicitly declined to follow *Spurlock*.  The *Frantz*  plaintiff alleged Fourth Amendment violations arising from an arrest in which he was beaten, taken into custody, and prosecuted when, according to him, he had done nothing wrong.  The court stated that "under *Albright*, plaintiff cannot bring a separate constitutional claim for malicious prosecution."  *Id.* at 876.  The court reasoned that "[t]he *Albright* court addressed the question of what constitutional support existed for a federal malicious prosecution claim, and held that, in a case involving underlying Fourth Amendment violations, the Fourth Amendment is the only 'peg' on which to hang a § 1983 claim alleging malicious prosecution."  *Id.* at 874.  Later in the opinion, however, the court stated, "we do not read *Albright* 'as totally eliminating the § 1983 cause of action for malicious prosecution in our circuit.'  In cases in which the plaintiff's Fourth Amendment rights are not implicated, we believe *Albright* leaves open the question of whether substantive due process may be available to the plaintiff."  *Id.* at 877.

Later, yet another panel of the court acknowledged the inconsistency between the *Spurlock* and *Frantz* decisions, and, concluding that they were irreconcilable, analyzed the pending case under both rules.  *Darrah v. City of Oak Park*, 255 F.3d 301, 308-10 (6th Cir. 2001).  Under the *Franz* analysis, the court observed that "at most, a plaintiff could recover additional damages as part of her overall Fourth Amendment claim if, following an arrest without probable cause in violation of the Fourth Amendment, a prosecution follows."  *Id.* at 310.  Following *Spurlock*, the court considered whether the plaintiff could prove the absence of probable cause to hold her for trial given the state

court's finding that probable cause indeed existed.  The court concluded that the doctrine of collateral estoppel would bar the claim unless the plaintiff could show that the defendants fabricated evidence and misled the court that bound the plaintiff over for trial.  The court affirmed the lower court's dismissal of the plaintiff's claim because it concluded that even if the evidence cited by the plaintiff was false or manufactured, the record still contained facts that supported a finding of probable cause to proceed with a criminal trial in state court.  *Id.* at 312 (stating that "if this court finds that there was probable cause to prosecute [the plaintiff], regardless of any alleged false statements made by [the defendant police officer], then she cannot make out a malicious prosecution claim under the Fourth Amendment").

Based on these appellate decisions, it appears that if there is constitutional claim for malicious prosecution that would be recognized in this Circuit, it would require at a minimum proof of the absence of probable cause to proceed with a state criminal prosecution.  The *Darrah* court stated as much when it held:

> Other than its holding that a § 1983 action for malicious prosecution requires a constitutional violation, the *Frantz* court did not further explicate the elements of a § 1983 malicious prosecution claim under the Fourth Amendment, because *Frantz* later held that no such claim exists after *Albright.*  We need not enunciate a test for malicious prosecution under § 1983 either, however, for Darrah can show no constitutional deprivation in this case.  Regardless of the specific elements of the federal malicious prosecution claim, plaintiff is unable to allege an unreasonable seizure under the Fourth Amendment, *i.e.,* that there was no probable cause to justify her arrest and prosecution.

*Darrah*, 255 F.3d at 312.

In this case, the defendants contend that the plaintiff is collaterally estopped from arguing that element of his claim because the state court magistrate found probable cause that the crime was committed at the preliminary examination.  Because the charged crime – drunken driving third

-19-

offense, *see* Mich. Comp. Laws § 257.625(9)(c) ("If the violation occurs within 10 years of 2 or more prior convictions, the person is guilty of a felony" and may be imprisoned for one to five years) – was a felony, a preliminary examination was required. *See* Mich. Comp. Laws § 767.42(1). The purpose of the preliminary examination is to determine whether probable cause exists to believe that an offense has been committed by the defendant. Mich. Ct. R. 6.110; *see also People v. Perkins*, 468 Mich. 448, 452, 662 N.W.2d 727, 730 (2003) (holding that "[t]he purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it"). The state magistrate specifically found probable cause that the plaintiff violated the drunken driving statute by operating his truck while intoxicated in a place accessible to the public.

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments." *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006). For the state court determination to have preclusive effect,

> "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue;' and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 681, 677 N.W.2d 843 (2004) (quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (1988)) (alteration in original and footnote omitted).
>
> As to the mutuality requirement, the *Monat* court held that mutuality was not required when collateral estoppel was being used defensively. 469 Mich. at 691, 677 N.W.2d 843 ("[W]e believe that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit.").

*Gilbert v. Ferry*, 413 F.3d 578, 580-81 (6th Cir. 2005). The Sixth Circuit has also held that "where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and

-20-

the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds, Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001).

The plaintiff is collaterally estopped from challenging the probable cause issue in his present constitutional malicious prosecution claim.  Here, the issue of probable cause was essential to the state court's bind-over determination and was actually litigated by the plaintiff in the state court. The plaintiff therefore is estopped from relitigating this issue.

Seizing on the language in *Darrah v. City of Oak Park* that proof of false evidence may undermine a state probable cause determination, the plaintiff here contends that Officer Dubay misled the state court in three respects.  He states in his response brief:

> 1.  Improper location (a public street).
> 2.  Pluger gave PBT with .17 results, major problem because (Pluger does not testify to this and never did paper on it. [sic]
> 3.  Beaupre/Wood witnessed field sobriety tests in Dubay's incident report.  Trial testimony and Deposition says otherwise.
> Remove 1 through 3 and Dubay has no probable cause to make an arrest.

Pl.'s Am. Resp. Br. at 15.  These arguments are unavailing for the same reasons stated in *Darrah*. The undisputed facts in the present record, particularly the acknowledgments by the plaintiff himself, show the existence of probable cause that the defendant violated the state law under which he was prosecuted.

Although the plaintiff claims Officer Dubay lied in the state court proceedings, he has failed to identify a place in the record containing such a lie.  Officer Dubay's incident report states, "I witnessed a vehicle driving in the construction site on the dirt hills at the corner of Utica/Schoenherr. . . I stopped him as he was entering the roadway."  Defs.' Mot. Summ. J. Ex. G, Incident Report.

-21-

At the preliminary examination, Dubay testified, "It happened at a construction site at Utica and Schoenherr." Defs.' Mot. Summ. J. Ex. C, Prelim. Exam. Tr. at 4. Neither party has submitted the transcript of Dubay's trial testimony, but presumably it was consistent with his other testimony. In fact, both the plaintiff and Officer Dubay each indicated on a map of the area that the plaintiff was pulled over in the same spot. Pl.'s Am. Resp. Ex. G, Diagram of Construction Site; Ex G2, C. Holz Dep. at Exhibit 1. There is no factual dispute about the location of the plaintiff's arrest or where he drove.

The plaintiff further alleges some sort of misconduct involving the administration of a PBT given to him by Officer Pluger. The plaintiff's brief states, "Pluger gave PBT with .17 results, major problem because (Pluger does not testify to this and never did paper on it." [sic] Pl.'s Am. Resp. Br. at 15. The plaintiff has presented no evidence that Pluger did not give him a PBT or that the results were not .17. In fact, at his deposition, the plaintiff admitted that he took the test and the results were as represented by the defendants. *See* Defs.' Mot. Summ. J. Ex. B, C. Holz Dep. at 111-12. Moreover, the absence of testimony at the state criminal proceedings relating to the PBT may have resulted from the limitation on admissibility of such evidence under state law. *See* Mich. Comp. Laws § 257.625a(2)(b).

Finally, the plaintiff complains that Officer Dubay falsely marked on his incident report that Officers Beaupre and Wood observed the field sobriety tests. Officer Dubay admitted at his deposition that Officers Beaupre and Wood probably did not witness the sobriety test. However, given the other evidence of intoxication, there is no paucity of support in the record for this element on the question of the existence of probable cause.

-22-

For these reasons, the Court concludes, based on the undisputed facts, that the plaintiff cannot prevail on his constitutional malicious prosecution claim, and the defendants are entitled to judgment in their favor as a matter of law.

## C.

The plaintiff also seeks to hold unnamed supervisors liable for the conduct of the field officers. The Sixth Circuit recently has restated the standard for imposing supervisory liability under 42 U.S.C. § 1983:

> [T]he § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005); *see also Mills v. City of Barbourville*, 389 F.3d 568, 580 (6th Cir. 2004) (holding that a defendant supervisory official cannot be liable for an underling's actions unless there is proof that the defendant "is personally responsible for the alleged unconstitutional actions that caused his injury").

Supervisory liability, therefore, is premised on the underlying unconstitutional actions of an officer over whom he exercises authority. *See Turner*, 412 F.3d at 643. Since the arresting officers' actions were not unreasonable in this case, there is no liability that can attach derivatively.

## D.

The defendants base their summary judgment motion on qualified immunity as well.  The Supreme Court has held that a claim of qualified immunity must be examined in two stages: "[f]irst, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right,'" and "the court must then decide 'whether the right was clearly established.'"  *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).  The Court finds in this case that the plaintiff has not established that "the officers['] conduct violated a constitutional right."  *Saucier*, 533 U.S. at 201.  "Because the plaintiff['s] Fourth Amendment rights were not violated . . . 'there is no necessity for further inquiries concerning qualified immunity.'"  *Causey v. City of Bay City*, 442 F.3d 524, 531 (6th Cir. 2006) (quoting *Saucier*, 533 U.S. at 201).

E.

The plaintiff also has brought a claim against the City of Sterling Heights.  Municipalities are considered "persons" within the meaning of section 1983; however, a city "cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, municipal liability will be found only when the alleged unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers."  *Id.* at 689.  A municipality also "may  be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels." *Berry v. City of Detroit*, 25 F.3d. 1342, 1345 (6th Cir. 1994).

-24-

As the Supreme Court recognized in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), a city can be held liable under section 1983 for failure to train its employees. However, in order to prevail on a section 1983 "failure to train" claim, the plaintiff must show that the "training program is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). A municipality can be held liable for inadequate police training under section 1983 "only where the failure to train amounts to deliberate indifference to rights of persons with whom police come into contact." *City of Canton*, 489 U.S. at 388. The mere fact that a few officers may be inadequately trained is not sufficient to demonstrate liability, as the shortcomings could be caused by officer inattention or poor administration. *Id.* at 391. Allegations that the officers in question could have been better trained are also insufficient. *Id.* Rather, the "failure to train [must] reflect[] a 'deliberate' or 'conscious' choice by a municipality." *Id.* at 389.

In *City of Canton*, the Supreme Court recognized two fact patterns in which a citizen could state a claim for failure to train. First, the nature of the officers' duties could be such that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" in not providing training. *Id.* at 390. The Court isolated the need to apprehend fleeing felons and the possession of firearms by officers as indicating to a "moral certainty" that proper training would be required. *Id.* at n.10. Second, the police may have so often violated constitutional rights that the need for further training must have been "plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." *Ibid*; *see also*

-25-

*id.* at 397 (O'Connor, J., concurring) (finding that such behavior constitutes "tacit authorization" of the officers' conduct).

The plaintiff seeks to hold the municipality liable for the actions of the arresting police officers. No matter what the theory, the plaintiff must first prove an actionable constitutional deprivation. Here, as noted, the officers' conduct was not unreasonable. As a consequence, there has been no constitutional deprivation as that term has been defined under section 1983 and therefore no basis for municipal liability here. The City, therefore, is entitled to summary judgment on the plaintiff's claims.

F.

Finally, the plaintiff also has alleged a conspiracy to deprive him of constitutional rights. Section 1985 of Title 42 of the United States Code prohibits state actors from conspiring to deprive persons of their constitutional rights.

> Section 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. To prevail on a § 1985(3) claim, one must prove "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'"

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005).

To prevail on a section 1985 claim, "there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (holding that "[t]he plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such

-26-

as race"). The officers' subjective intent for making an arrest is not relevant as long as it was not motivated by class-based animus. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (testing for objective reasonableness when evaluating probable cause for an arrest, holding that officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Hale*, 396 F.3d at 725 (testing for objective reasonableness when evaluating probable cause for a search).

The plaintiff's conspiracy claim in this case must be dismissed because the complaint fails to allege that the plaintiff was discriminated against based on race or some other class-based animus. Therefore, even if everything in the plaintiff's complaint were true, the plaintiff could still not prevail on a section 1985 claim. The plaintiff's argument in his response that the officers discriminated against him because he is a member of a class of alleged drunk drivers is obviously without merit. Alleged drunk drivers are not a protected class under the Equal Protection Clause.

III.

The Court determines that the plaintiff has failed to bring forth evidence that establishes a material fact question supporting all the elements of his section 1983 and 1985 claims against each of the defendants. The defendants are entitled to a judgment as a matter of law.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt # 23] is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: November 21, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means or first class U.S. mail on November 21, 2006.

s/Felicia M. Moses
FELICIA M. MOSES